Good morning, Your Honors. May it please the Court, my name is Clark Thiel. I represent Ramparts, Inc. and MGM Grant Resource Development. I would like to reserve five minutes of time for rebuttal. Don't feel you both of you have to take your full 20 minutes. It really doesn't require that, I think, for this. We have some odd system of deciding how much time you get, which frequently malfunctions. I will follow the Court's lead. Okay. However, there are a number of issues that were brought up in both with regard to the trial court's pretrial, trial, and post-trial proceedings that are raised in this appeal that have been fully briefed by the parties. So I think I will primarily just focus on the first three, but I may touch on the last four, time permitting and with your indulgence. Would you keep your voice up, counsel, please? Absolutely. Thank you. The first issue that I would like to address is the district court's improper reduction of the $1.2 million jury verdict down to $50,000. The gist of this aspect of the appeal is that Luxor was denied any due process with regard to this decision by the judge. Tell me, counsel, how that can be. If I understand the record correctly, there was a motion in Lemony, number one, and Luxor argued that AIC had misrepresented the amount of the policy's sublimit. That's at ER 226 and 227. Apparently, AIC acknowledged its mistake. It said it was, in fact, $50,000. District court explained twice in open court that it was going to apply the $50,000 sublimit, and you did not object. What am I missing? Actually, we did object, and that was the entire purpose of the motion. Where in the record is that, Joe? In regards to our motion in Lemony, number two. What? Our motion in Lemony, number two, was to exclude any evidence of the $50,000 sublimit. And that was after what? At what point? That was actually when the judge was ruling on denying our motion in Lemony, number two, is when the judge said, and I'll just reduce it down to $50,000 if the jury comes in. Okay. Help me with the time. Yes. As I understand it, in response to motion in Lemony, number one, pardon my voice, by the way, the judge said, I'm going to limit this to $50,000. You didn't object. But some period of time after that, you filed number two. Is that right? No, that's not correct. Okay. The Luxor filed three, I believe it was three motions in Lemony, and they were all heard at the pretrial conference in Syria. And the first motion in Lemony was with regard to the $10,000 limit. The second motion in Lemony was with regard to the $50,000 limit. And the due process implications is that Luxor was never heard in a summary proceeding with regard to the applicability of the $50,000 sublimit. Well, that doesn't seem like a very complicated question. I mean, it's a straight question of what a policy means. You didn't argue that in your papers? It's not a very complicated question. However, there are ambiguities in the policy as to whether or not it applies, and Luxor at least has the right to be heard with regard to its arguments in those respects. Did you ask for a hearing on that or a trial? Or did you want it to present testimony? The parties did ask for a leave to brief for summary adjudication of that, among a couple other issues. Judge Hunt. So what you're complaining about as a due process deprivation is deprivation of a right to file a brief, is that right? No. It is the judge made a dispositive or almost dispositive ruling without hearing from the parties. What I was trying to find out is what you wanted to do that you were deprived of the right to do. You wanted to file a brief on that point? There are procedures that the Court and the parties follow in addressing these types of things. It's either done through summary adjudication or through a judgment, a Rule 50 motion. The insurance company did not make either of those motions. Luxor did not have the opportunity to be heard with regard to either of those motions. I thought you said that in the in the limine proceedings, you filed briefs on why it shouldn't be 10,000, why it shouldn't be 50,000. Luxor filed briefs that addressed the issues, the arguments that Luxor advanced in his briefs had to do with the insurance company's claims handling practices and the insurance company's discovery practices. It had nothing to do with the interpretation of the contract. The interpretation of the contract was left for the jury to decide by the parties and the district court judge. The jury heard evidence from both sides, heard argument from both sides, rendered its verdict for $1.2 million in favor of Luxor. Judgment was entered in that amount. The judge then did a nunk-pro-tunk order reducing it down to $50,000. Luxor was never heard during any step of those proceedings. But the judge did. Did he not, after the first motion in limine, say that that's what he was going to do? He did say that's what he was going to do, but he didn't.  He didn't agree with it, I understand. We did not agree with it, but he also said that he may reconsider his decision during arguments and during closing arguments, and Luxor interpreted it. You don't say that you wanted to put on evidence on it. You wanted to argue it and submit briefs. Is that right? The parties did put on evidence of it. Okay. The parties put on evidence of it in front of the jury. So you object to the judge's concluding that it's a matter of law. It was a $50,000 limit applied. We object to the judge's conclusion that it was a matter of law after the fact, after the jury heard it, after the jury decided, after the jury rendered its verdict. Then the judge went back and said, that's not what I intended. I wanted it to be $50,000. Well, I'm still trying to find out what the deprivation of due process was, that what would you have done if you knew that he was going to enforce what he said at the beginning? Would you have wanted to argue this? Would you have wanted to put on witnesses? What is it that your due process deprivation was? Luxor would have argued that there is an amendment in the policy that modifies the $50,000 limitation of liability. And what is that? And that is It's a policy extension that — and I'm not able to put my finger on it at the moment, and I would certainly look for it. Was that — was it — that extension or amendment or whatever it was before the judge? Yes. Yes. In fact, and during the jury, the insurance company admitted that that was a policy extension that was in addition to the coverages that were at issue. It applied to the property of others provision. And it is at 3 ER 43839, I believe. Where is it? 43839 of the record, and that's in Volume 3 of the excerpts. The point that I would like to make, though, is that the judge allowed the question of Luxor's damages without reference to any limitation to go to the jury.  The judge said that he would reduce the — he said provisionally that he would reduce it down to $50,000. That was apparently an invitation to the insurance company to make a Rule 50 motion. The insurance company did not do that, either during trial or after trial. The parties, like I said before, the parties did approach the judge, ask for leave to brief summary adjudication of that issue. The judge declined the party's request. The second point that Luxor contends was in error. It was the district court's quantification of Luxor's special damages at $10,000. The jury was asked to decide whether or not Luxor was entitled to special damages in the form of attorney's fees because of the insurance company's violations of the Unfair Claims Practices Act in Nevada. The jury said — sorry, before I get there — the judge reserved for itself the determination or the quantification of those damages should the jury find that that was the case. Luxor did not object to the judge's reserving the quantification for himself. The jury did find that the — that Luxor was entitled to recover its attorney's fees as special damages as a result of violations of the Unfair Claims Practices Act. What would have been a proper amount of damages? Sorry? What would have been a proper amount of attorney's fees? Luxor submitted that it was the entire amount of the attorney's fees that it — Why would that be true? Why would that be true? Because the judge himself recognized that if you're forced to file a lawsuit, you don't — you file it to conclude it. You don't all of a sudden at some point say, okay, well, I didn't — the judge said if you file a lawsuit, you file it to conclude it. We were seeking to introduce evidence as to why we continued to maintain the lawsuit throughout the duration of the proceedings. The judge said that he didn't want to hear that evidence, that he had heard enough evidence in that regard, and that if we had filed a lawsuit, we had filed it to see through its conclusion. Didn't the judge ask you then to submit an apportion from what you did because of the delay versus what the whole trial would cost? No. After — after judgment was entered, then we moved to amend the judgment to include the special damages award, and we submitted our briefs on what we believed was the appropriate damages award. The insurance company submitted their brief, and the judge came out with his — his ruling, which was $10,000. The point about the $10,000, though, is not based on any evidence that we could discern. But you gave him no evidence that would make it possible to discern. We gave him all of our attorney billings, all of our — all of our records. You just threw it all in. Yes. Okay. The third point that I would like to address is the improper summary adjudication of the indemnity provisions of the contract. And this was done in summary judgment early in the proceedings, and the district court ruled based on what it interpreted the insurance policy to contemplate. And we submitted extensive legal authority in our briefs, interpreting the actual language used by the insurance company, and it's our position that the district court erred in disregarding that information and going to its understanding of the contemplation of the insurance — the insurance policy. Nevada law requires that insurance policies be construed according to their language, that they be construed as a whole, that any ambiguities be found in favor of coverage and strictly construed against the insurance company. The Court did not go through any of that analysis at all in finding — in his findings. Do you want to save your last five minutes for rebuttal or not? You don't have to. I will — I will do that unless you have any questions on anything that I've addressed so far. I'll ask one question. Yes. What would have happened if Luxor had decided not to make the repairs? The insurance company admitted that — that nothing would have happened. They would have continued to pay for — for business interruption until the policy limits ran out because the insurance company didn't have the power to do it and — without Luxor's cooperation. But the insurance company also admitted during trial that had the tenant paid for the repairs, it would have been a covered — covered loss and they would have paid for the whole thing. All right. Thank you. Good morning, Your Honors. Julie Woods on behalf of FFIC and AIC. Excuse me. I guess I'll just focus real briefly on the first three issues since that was what was discussed by counsel. On the reduction of the award to policy limits, I think the Court has understood that this was waived. A couple of motions in limine were made, not on the question of the interpretation of the policy, but on estoppel issues. The Court, after he denied those motions, said, I'm going to interpret the policy and apply the policy limits. Luxor never said a word. Luxor never objected. And this was an entirely correct thing to do. Courts interpret policy provisions. And that was what the Court did in this case. What about the amendment? Was that considered also? I'm not sure what amendment he's talking about, quite frankly. There were a few arguments in the opening brief. There were some talking about provisions that would have applied to Luxor if Luxor was an additional insured under the policy. Well, that was already summary adjudicated against Luxor on summary adjudication. There was another provision, and maybe he's referring to this, where they talked about the peril of collapse being applied to the policy. That's a peril. That means that if there was a collapse of the building, in fact there was, a partial collapse, then the policy would apply. That didn't modify the policy limits. It just enhanced the amount of coverage under the policy. And those are the only ones that I'm aware of that he has argued modify the policy. But that was not before the Court. The insurance policy was before the Court. And since it is just a policy provision, it still would have been a matter of law for the Court to decide, not for the jury to decide. So it was Wade, first of all, and second of all, the Court made the right decision in deciding to later reduce the damages to $50,000. On the attorney's fees. Kennedy, what do you think the proper measure of the attorney's fees is? Well, what happened was, was the jury was asked to decide whether these statutory violations, which were delay and failure to state the reason for denial, if they caused damage to Luxor by causing Luxor to file the complaint. And the jury said yes. And then Luxor came in and asked for the full amount of attorney's fees. And the Court said, I'm not going to give you the full amount because you would have continued this lawsuit anyway, because the lawsuit wasn't about the delay and it wasn't about the failure to deny, but it was because of the coverage. But isn't that always true in this type of case? It's based on the fact that the insurance company doesn't reply promptly. That's the basis of the crime. Isn't it true always that they would have filed the suit anyway? That's what the trial court found. And this is, you know, this is something that's true. But isn't that always true? I'm sorry? Isn't that always true if there's something to be recovered? Right. It would seem to be always true. But always you would get nothing because you'd always file it or a minimal amount? Well, these are damages for the fees violations. And to be quite honest, they weren't entitled to any damages for these violations because the statute doesn't provide for attorney's fees. Yeah. But there's the policy of the State is to try to see that insurance companies comply with the statute. Right. Well, if you're damaged, and the thing is, is the statute, like I said, doesn't even contemplate attorney's fees, so it's contemplating other damages. Maybe the insured had to go out and fix the property itself or it incurred other expenses because of these damages, and then the insurance company comes back and says, there's lots of different damages that an insured can suffer because of a delay in failure to respond if there ends up being coverage. In this particular case, there wasn't anything. I mean, Luxor didn't even ask for any other type of damages other than attorney's fees, which aren't even awardable under the statute. So your view of the statute is the insurance companies can ignore the statute? Absolutely not. No? No. They can't. Only if there are collateral damages. No. But the point is, is that the insured is entitled to, or the claimant is entitled to the damages it suffered as a result of the delay. And normally there won't be any because you said that they just go out and have to they file a suit anyway. And you've got to find out whether there were some kind of collateral problem like having to hire an expert. They wouldn't ordinarily hire. That's not necessarily so. Remember, this is all sorts of insurance. What if you have an insured who wanted an experimental treatment or wanted some sort of medical treatment under a health insurance policy, and you delayed providing coverage under that, and the insured died? There would be some serious damage in that case. And that would be damages because of the delay. So that's what the statute contemplates is causation. And it would be, you know, awarding a windfall to Luxor to say that just because we had this little delay, you get all your attorney's fees, even though you would have incurred every one of these attorney's fees anyway. Well, not necessarily. The theory is that if you applied and you gave your position and the two of you negotiated, you might arrive at a settlement. That's not what the court found. That's the purpose of the statute, to say you reply and then you try to settle your case. You don't just brush it off. You can still settle a case after a case is filed. I know you can. But you don't have to file your case if you reply within 30 days and then the parties negotiate. Okay. Well, then that's probably why the trial court awarded $10,000, because that's what the award was for having to go to the effort of filing the complaint. And we're not disputing that, other than the fact that, you know, that's not really awarded as a damage under the statute. But that's what the trial court found. And this is subject to the clear error standard of review. Is there clear error in finding that the damage of this delay was that you had to go out and file a complaint or write a letter or make some more phone calls or whatever to find out what the insurance company's position is? It does not mean that you get a $600,000 windfall. Well, I'm not asking, saying whether that's the correct answer. I'm saying what is the correct measure of damages? Well, it's what Luxor suffered, and Luxor wasn't particularly forthcoming in what they suffered, because all they asked for was everything. If Luxor had been able to come forward and say, had we heard earlier we would have done this, that, and the other, we would have done A, B, and C, and this, you know, X, Y, and Z would have happened, then we would be able to understand that more. But Luxor didn't come forward. And that was Luxor's burden of proof to show its own damages. So the court was sort of left with this position of, do I look through the two inches of attorney's fees that Luxor gave me, or do I just try to approximate what the damages are? And that's what the court did. Well, how do you think Luxor should determine what its damages are? Suppose you had replied in 30 days and pointed out to them the claims that are not supported and showed them why. Maybe they litigated that because that's the purpose of the statute. It says failing to affirm or deny coverage of claims within a reasonable time after proof of loss is one. The other is failing to provide promptly to ensure the reasonable explanation of the basis in the insurance policy with respect to the facts of the claim, the applicable law, for the denial of the claim, or for an offer to settle a compromise. How does the court measure what might have happened had all of that taken place as the statute contemplates? Well, the court found that Luxor would have litigated this case anyway. So that's its factual finding. Okay? So that means that that most, if not all, of the attorney's fees would have been incurred anyway. I assume that's true in every case, that if you don't reply, the parties are going to the other side is going to litigate. The purpose of this is to avoid the necessity for that litigation. Well, if the insurance company had determined that, let's say Luxor filed a lawsuit that said, I'm entitled to coverage under the property of others provision. And then the AIC came back and said, you know, you're right. Yeah, you had to file the lawsuit, but you're right. And then the lawsuit would have gone away. But that's not what happened, because this was going to be a fight no matter what, because Luxor was claiming coverage under all sorts of other provisions that it didn't recover, you know. It was claiming as an additional insured under the property damage policy. It was claiming an additional insured under the liability policy. So if they won, then what? If they won. Suppose they won and they said, well, you know, if they, if the insurance company had come back, as they're supposed to, and said to us, no, you're not entitled to anything, and then we said, well, look, here are the policy provisions, and they said, well, we don't want to pay you that, then I suppose they'd be entitled to all of the attorney's fees. Well, I go back to who has the burden of proof. And the burden of proof is on Luxor. And if Luxor was able to show that some other scenario would have happened, if the claim had been denied in 30 days, it was welcome to put that proof on. But the factual finding by the trial court, and Luxor doesn't even dispute this factual finding by the trial court, is that Luxor would have litigated this case anyway. Well, that's the question. Is that a reasonable interpretation of the statute? Well, it hasn't. Because it's, it certainly seems that the whole purpose of this is to avoid litigation and then don't abide by that process. Right. But not. They would have done it anyway. Yeah, I understand. But even if you comply with the statute, the district court found that litigation would not have been avoided. So the statute's purposes would not have been fulfilled in this particular case. If Luxor had other evidence to the contrary, it was welcome to present that. But it didn't. This case was fully litigated on coverage through summary judgment and through trial. Okay. Let me, let me move on quickly to the third issue, which is Luxor's claim that it was covered for the cost of repairing its own property under the liability, as an additional insured under the liability portion of the AIC's policy. Normally, when a company suffers property damage, it's going to recover under its own first party property damage coverage. Here Luxor is taking this much further and claiming damage to its own property is covered under the liability policy. That's not what the plain meaning of a liability policy is. When you have a liability policy, you have to have bodily injury or property damage to third parties, and that didn't occur here. There was no third party who was claiming any damages for bodily injury or property damage. Now, Luxor has tried to rely on a lot of these environmental cases, but these did involve injuries to third parties. A lot of cases, the contamination had spread to third parties or the contamination had spread to the groundwater and to the State's natural resources, and the courts in those cases have found that that resulted in an injury to third parties. And even when there hadn't been, in a few cases where there hadn't been an injury, there was an imminent risk of injury if preventative measures weren't taken. And these usually involved cases where there was an ongoing occurrence like contamination, and the remediation took place while it was ongoing and was intended to prevent any further damage by the insured. And this – and the reason for this is that we don't want, under these circumstances, to have an insured wait until it is inevitable that the third party is injured and then come back to get the insurance policy coverage. We want to have the insured have the incentive to go ahead and clean it up. That's not our case here. There was no ongoing occurrence. There was no imminent risk of injury to third parties. This is more like the Maidman case, where there was a brick that fell and an accident and a NOSA violation to prevent any further injuries. So that's a preventative measure which the courts have held is not damage to third parties because no liability has occurred. And the – I'll just briefly mention that there's also no showing that Luxor was legally obligated to pay this as damages. On summary judgment, Luxor came in and said the whole purpose of the NOSA violation was to keep the lounge from being reopened before the property was fixed. And that kind of coercive action is not covered under a liability policy. I am happy to go on and talk about other issues that weren't addressed, or if you prefer, I can just take it. I just wanted to sum up and say that, you know, Luxor had its trial. It had a fair trial. It recovered damages under the property of others provision. It got its full policy limits. And it did recover damages under the violation of the Fair Claims Act. And its request to get more damages in this appeal should be rejected. Thank you. Breyer. Thank you. First of all, the policy language with regard to the additional coverage for collapse is in the policy, which is in the Appellee's Supplemental Excerpts of Record at page 157, and that is in section D. Counsel argued that the pertinent language. Yes. Additional coverage. These additional coverages apply only when special cause of loss is covered and special cause of loss was covered. Collapse. We will pay for loss or damage caused by or resulting from risk of direct physical loss involving collapse of a building or any part of a building caused only by one or more of the following. And subsection D there is weight of people or personal property. The insurance company agreed that it was the weight of people or personal property that caused the collapse. I obviously don't have that before me, but any mention of amount? No. $10,000, $50,000 in that amendment? It says that this additional coverage will not cause the limits of insurance provided, will not increase the limits of insurance provided in this coverage  But what does that have to do with the $10,000 or the $50,000 sublimit? And that goes back to Luxor's point, is that it was never given the opportunity to address these types of issues in front of the district court. The district court summarily concluded that the $50,000 sublimit applies without even hearing Luxor. But there was no amount in this amendment. I was – I misunderstood. Thank you. The counsel for the insurance company also contends that Luxor had the burden of proof of proving the attorney's fees that it incurred. It did prove that. It proved that to the jury. The jury established – the jury decided the causation question. The judge reserved for himself the quantification question. The judge also indicated that – Reserved what? I'm sorry. He reserved what? Reserved the quantification. The entitlement, the causation was determined by the jury. The jury determined that the insurance company's unfair claims practices caused the damages. The court disregarded that and said, oh, well, Luxor would have litigated anyway. There is no basis in the record for that finding. And I respectfully submit that that wasn't within the province of the trial court because that had already been decided by the jury, and the jury decided that that's not the case. Now, let me just get this clear. The judge reserved for himself the amount of damages? Yes. And did you object to that? We did not. And we still have no objection to that as long as it's based on the evidence and the facts before the judge. So all the jury then did is determine liability. The jury did determine liability, yes. And it also went on to determine damages, which the judge set aside because he had reserved that for himself? The jury did not hear any evidence of the amount of damages that Luxor incurred. The judge ruled pretrial that the jury was not to hear any of that evidence. The jury was only to decide if the insurance company's conduct resulted in the need to file the litigation. And do you agree with your opponent that the one liability is established, the amount of damages, you have the burden? I agree that we have the burden of proof, but the determination has to be based on that proof, on that evidence. And we did submit the evidence of our, of our, of the quantification or the quantity of our damages. And the insurance company did not object to that quantification in any way. Okay. Thank you. Thank you. The case is argued will be submitted.
judges: Nelson, Reinhardt, Smith